UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDY NISSOU-RABBAN, Individually and on Behalf of All Other Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE BANK (USA), N.A.,<br><br>Defendant. | Case No.: 15cv1673-JAH (RBB)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE, GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND, AND DENYING DEFENDANT'S MOTION TO DISMISS [DOC. NOS. 59, 62, 65]** |

## **INTRODUCTION**

Presently before the Court are Capital One Bank (USA), N.A.'s ("Defendant" or "Capital One") Motion to Strike Portions of Plaintiff's Second Amended Complaint ("SAC") pursuant to Rule 12(f) of the Federal Rules of Civil Procedure (Doc. No. 59) and Motion to Dismiss the SAC Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 65). Plaintiff Sandy Nissou-Rabban ("Plaintiff") has also filed a Motion for Leave to File an Amended Complaint with Class Action Allegations (Doc. No. 62). The motions have been fully briefed. After careful consideration of the pleadings, and for the reasons set forth below, Plaintiff's Motion for Leave to Amend is **GRANTED**,

Defendant's Motion to Strike is **DENIED**, and Defendant's Motion to Dismiss is **DENIED**.

# BACKGROUND

In her SAC, Plaintiff alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*., and California's Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1 *et seq*., based on Defendant's alleged inaccurate reporting of debt discharged in bankruptcy and the subsequent failure to investigate Plaintiff's disputed credit report information.

## I. Factual History

In 2000, Plaintiff opened a Neiman Marcus store card and a Saks store card ("Accounts") through Defendant. See Doc. No. 54, ¶¶ 152, 155. In 2013, Plaintiff fell behind on her payments, and by December of 2013, Defendant had "charged off"[1] the Accounts. Id. at ¶¶ 153, 156. Sometime between December of 2013 and November 24, 2014, Defendant sold or transferred the Accounts to a third party.[2]

On November 24, 2014, Plaintiff filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of California. See Doc. No. 54, ¶ 108. Defendant was a named creditor in Plaintiff's bankruptcy proceedings. Id. at ¶¶ 109, 110. On February 24, 2015, the bankruptcy court granted Plaintiff's petition and discharged, in relevant part, her debt to Defendant. Id. at ¶ 111. Defendant received notice of the discharge on approximately February 25, 2015. Id. at ¶¶ 112, 161.

On April 13, 2015, Plaintiff received a copy of her credit report from Equifax Information Services LLC, a credit reporting agency ("CRA"). Id. at ¶¶ 154, 157. The Equifax report indicated the Accounts status displayed "charged off" rather than

---

[1] The term "charged off" indicates that the creditor has treated the account receivable as "bad debt" or "a loss or expense because payment is unlikely." Montgomery v. Wells Fargo Bank, No. C12–3895 TEH, 2012 WL 5497950, at *3 (N.D. Cal. Nov. 13, 2012).

[2] This was not alleged in the SAC, however, this fact is not in dispute between the parties.

"Discharged in Bankruptcy." Id. Specifically, with respect to Plaintiff's Defendant account ending in 830*, the credit report stated:

- Status – Charge Off
- Charge Off Amount: $8,435
- Additional Information – Charged Off Account

Id. at ¶ 154. As to Plaintiff's second Defendant account ending in 490*, the report stated:

- Status – Charge Off
- Charge Off Amount: $332
- Additional Information – Charged Off Account.

Id. at ¶ 157.

In May 2015, Plaintiff sent written notice to Equifax disputing the accuracy of the Defendant's reporting. Id. at ¶ 170. Plaintiff asserted that any and all accounts discharged in her bankruptcy proceeding should properly reflect they were discharged in bankruptcy on her credit report, as required by industry standards and regulations. Id. at ¶ 163. Plaintiff alleges Equifax notified Defendant that Plaintiff disputed the accuracy of the reported status of her accounts. Id. at ¶ 172. Plaintiff alleges Defendant failed to reasonably investigate the disputed account information and review all relevant information as required by statute. Id. at ¶¶ 182–184. In addition, Plaintiff alleges Defendant has a policy of not notifying credit reporting agencies that former debts that have been discharged in bankruptcy, are no longer "charged off," or currently still due and owing. Id. at ¶ 85. Plaintiff argues this deliberate policy adversely affects Class Member's ability to obtain credit or employment. Id. at ¶ 80-105. As a result, Plaintiff initiated the instant action against Defendant.

## II.  Procedural History

Plaintiff originally initiated this lawsuit against Defendants Capital One, Nordstrom, Inc., and Equifax Information Services LLC (collectively "Defendants") on July 28, 2015, and subsequently filed her First Amended Complaint ("FAC") alleging that Defendants violated the FCRA and CCRAA. See Doc. Nos. 1, 19.

3

On November 20, 2015, Defendant filed a Motion to Dismiss the FAC. (Doc. No. 27). In December 2015, upon the parties' joint motions, Defendants Nordstrom, Inc. and Equifax Information Services LLC were dismissed with prejudice. See Doc. Nos. 35, 36. On September 21, 2016, this Court entered an Order granting Defendant's Motion to Dismiss without prejudice. (Doc. No. 52). Subsequently, on October 21, 2016, Plaintiff filed a Second Amended Complaint ("SAC"). (Doc. No. 54). On November 7, 2016, Defendant filed a Motion to Strike Portions of Plaintiff's SAC. (Doc. No. 59). Plaintiff filed an Opposition to the Motion to Strike and a Motion for Leave to Amend. (Doc. Nos. 61, 62).

Defendant filed a Motion to Dismiss the SAC. (Doc. No. 65). The Motion to Dismiss the SAC was fully briefed by the parties. This Court took all three pending motions under submission pursuant to Civil Local Rule 7.1.d.1. (Doc. Nos. 59, 62, 65).

## DISCUSSION

### I. Defendant's Motion to Strike

#### a. Legal Standard

Federal Rule of Civil Procedure 12(f) authorizes a court to strike from a pleading any "immaterial, impertinent, or scandalous matter." "Immaterial" means that the matter has no essential or important relationship to the claim for relief or the defenses being pled. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd on other grounds, 510 U.S. 517, 534–35 (1994). "Impertinent" matter includes statements that are not necessary to the issues in question. Id. "'Scandalous' includes allegations that cast a cruelly derogatory light on a party or other person." In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). In ruling upon a motion to strike, a court must view the pleadings in a light most favorable to the nonmoving party. In re 2TheMart.com, 114 F. Supp. 2d at 965. "A federal court will not exercise its discretion under Rule 12(f) to strike

4

a pleading unless the matters sought to be omitted have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party. Cortina v. Goya Foods, Inc., 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015).

### b. Analysis

Defendant requests the Court strike portions of Plaintiff's SAC that seek to join a punitive class and add additional class allegations. See Doc. No. 59–1. Defendant argues Plaintiff violated the terms of this Court's December 17, 2015 Scheduling Order (Doc. No. 33) by attempting to join a new party more than eight months after the deadline had passed. Additionally, Defendant argues this Court's September 21, 2016 Motion to Dismiss Order (Doc. No. 52) did not grant Plaintiff leave to add additional parties or class allegations. (Doc. No 59-1, pg. 2)[3].

Plaintiff argues her amendments did not exceed the scope of the September 21, 2016, Motion to Dismiss Order (Doc. No. 52) because the Order included no limitation language. See Doc. No. 61. Additionally, in reference to the eight month delay, Plaintiff argues good cause existed as the deposition giving rise to the class allegations did not occur until August 23, 2016, during which time Defendant's Motion to Dismiss Plaintiff's FAC was under consideration. Id. Finally, Plaintiff argues Defendant should be estopped from asserting violations of the Scheduling Order (Doc. No. 33) since Plaintiff has "willingly, and repeatedly" granted Defendant extensions of time frames contained in that same Order. See Doc. No. 61, pg. 21.

A motion to strike allows the Court broad discretion in deciding whether to strike allegations in a complaint. See Nurse v. United States, 226 F.3d 996, 1000 (9th Cir. 2000); Stanbury Law Firm v. Internal Revenue Serv., 221 F.3d 1059, 1063 (9th Cir. 2000). Here, the Court is in agreement with Plaintiff, finding the Motion to Dismiss Order allowed amendment of Plaintiff's First Amended Complaint within thirty days, and included no

---

[3] Page numbers cited refer to the page numbers assigned by the Court's Electronic Filing System.

other limiting language. Plaintiff's addition of a new party and class allegations clearly occurs after the deadline established in the Scheduling Order (Doc. No. 33), however, Plaintiff provided sufficient good cause for the delay. Even if the amendment is considered a procedural misstep, it does not render the amendment "redundant, impertinent, immaterial, or scandalous." Fed R. Civ. P. 12(f). Accordingly, this Court **DENIES** Defendant's Motion to Strike.

## II. Plaintiff's Motion for Leave to Amend SAC

### a. Legal Standard

Federal Rule of Civil Procedure 15(a) allows a complaint to be amended after responsive pleadings have been filed when the amending party obtains "leave of the court." Fed. R. Civ. P. 15(a). Leave to amend is "freely granted when justice so requires." Id. Generally, leave to amend will be granted unless the weighing of several factors show that the amendment would be inappropriate. United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F. 3d. 1048, 1052 (9th Cir. 2001). Factors considered in ruling on a motion to amend include undue delay, bad faith, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989). The single most important factor is whether prejudice would result to the nonmovant as a consequence of the amendment. See William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 668 F.2d 1014, 1053 (9th Cir. 1981), cert. denied 459 U.S. 825 (1982). Because Rule 15(a) favors a liberal policy, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. See Genetech, Inc. v. Abbott Laboratories, 127 F.R.D. 529 (N.D.Cal. 1989).

### b. Analysis

Plaintiff's arguments in her Motion for Leave to Amend are similar if not identical to those in her Opposition to Defendant's Motion to Strike. See Doc. Nos. 52, 62–1. Plaintiff insists good cause exists for her delay in amending the complaint to add the class allegations. See Doc. No. 62–1. Plaintiff argues this good cause arises from Plaintiff's

inability to discover the necessary information to make class allegations until after the August 23, 2016 deposition of Defendant's Person Most Knowledgeable ("PMK"). Id. Defendant argues Plaintiff's Motion for Leave to Amend should be denied for several reasons. See Doc. No. 76. First, Defendant argues Plaintiff has failed to make the requisite showing of good cause under Rule 16 of the Federal Rules of Civil Procedure. Next, Defendant argues Plaintiff's proposed amendment is not only unduly prejudicial but it is futile. Id. Finally, Defendant contends Plaintiff's proposed amendment was undertaken in bad faith. Id.

As articulated above, this Court finds good cause for the delay in adding the class allegations. In a declaration, Plaintiff's counsel confirmed the basis for the class action allegations was the deposition of Defendant's PMK, which occurred after the February 1, 2016 deadline. See Doc. Nos. 33, 62–2. This is sufficient for good cause and evidences no bad faith on behalf of Plaintiff.[4]

Defendant argues it has actively litigated this case as an action brought by an individual plaintiff. See Doc. No. 76, pg. 12. Additionally, Defendant has propounded written discovery, taken Plaintiff's deposition, and engaged an expert witness on the basis of countering the allegations of an individual plaintiff. Id. Defendant argues the addition of a putative class will unnecessarily prolong costly litigation resulting in undue prejudice. The Court disagrees.

While Defendant may certainly incur additional costs associated with the amended class allegations, the expenditure of additional monies or time do not constitute undue prejudice. Additionally, Plaintiff's SAC, in terms of the alleged substantive claims, is unchanged. Plaintiff does advance new legal theories concerning Defendant's internal

---

[4] The futility of Plaintiff's amended complaint with the added class action allegations will be addressed in the subsequent section. Therefore, the Court will only analyze whether allowing Plaintiff to file an amended complaint would be unduly prejudicial to Defendant.

7

policies, but these additional allegations were not known to Plaintiff upon filing the FAC. Acri v. International Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir.1986) (". . . late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."). Defendant is able to utilize a substantial amount of work product it has acquired litigating this case thus far. As Federal Rule of Civil Procedure 15(a) prescribes, leave to amend "shall be freely given when justice so requires." Plaintiff had no reason to allege the class allegations until after the deposition of Defendant's PMK. Here justice requires allowing Plaintiff to amend her complaint to include those allegations. Accordingly, the Court **GRANTS** Plaintiff's Motion for Leave to Amend.

### III. Motion to Dismiss

#### a. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss for failure to state a claim for relief. Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, the plaintiff is required to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Determining

8

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the reviewing court must assume the truth of all factual allegations and construe them in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557).

When ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

### b. **FCRA Claim (Count I)**

Plaintiff alleges a violation of 15 U.S.C. §§ 1681 *et seq*., otherwise known as the FCRA. Congress enacted the FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007). To ensure that credit reports are accurate, the FCRA imposes certain duties on furnishers that provide credit information to CRAs. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009). Section 1681s–2(a) of the FCRA bars furnishers from reporting information they know or have reason to believe is inaccurate. 15 U.S.C. § 1681s–2(a)(1)(A). There is no private right of action to enforce § 1681s–2(a). Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059–60 (9th Cir. 2002).

However, there is a private right of action to enforce § 1681s–2(b), which is the statute that Plaintiff alleges Defendant has violated. See 15 U.S.C. §§ 1681n-o. Section 1681s–2(b) requires furnishers who receive notice that a consumer disputes information on a credit report to: (1) conduct an investigation, (2) review all relevant information provided by the CRA, (3) report the results of the investigation to the CRA, (4) report those results to all other CRAs to which the person furnished information if the disputed information is found to be incomplete or inaccurate; and (5) modify, delete, or permanently block reporting of that item when reporting to a CRA if the disputed information is found to be inaccurate, incomplete, or unverifiable after reinvestigation. Id. § 1681s–2(b). "These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." Gorman, 584 F.3d at 1154. Further, "[a] furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s–2(b) simply by failing to report a meritless dispute . . . [i]t is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s–2(b)." Id. at 1163.

Defendant moves to dismiss Plaintiff's FCRA claims, arguing Plaintiff failed to allege both that the Capital One account information on her credit report was inaccurate and that Capital One did not adequately investigate the disputed information. These arguments are discussed in turn.

### i. Inaccurate reporting information

Defendant argues that since Plaintiff failed to make prima facie showing that Capital One reported inaccurate information, her claim is legally deficient. Specifically, Defendant argues that Plaintiff failed to allege the dates required to properly show Defendant's reporting was inaccurate. Additionally, Defendant argues Plaintiff is unable to use Metro 2 allegations to establish an inaccuracy for purposes of the FCRA

\\
\\

### 1. **Plaintiff pled sufficient dates**

In this Court's Order granting Defendant's Motion to Dismiss the FAC (Doc. No. 52), the Court noted Plaintiff's FAC did not plead the essential dates necessary to sufficiently allege her FCRA claims. Specifically, Plaintiff did not provide the date Defendant reported the Accounts had been charged off, did not allege whether this reporting occurred during the pendency of her bankruptcy proceedings or after the date of discharge, and failed to explain which billing period the charged off balance corresponds. Defendant argues Plaintiff failed to remedy this error in her SAC. See Doc No. 65–1, pg. 15.

In her SAC, Plaintiff alleges that it was "accurate" for Defendant to report the Accounts previously "Charged Off" as historical facts. See Doc. No. 77. Plaintiff argues the inaccuracy occurred when Defendant continued to report the current status of Plaintiff's Accounts as "Charged Off" even after receiving notification that Plaintiff's accounts were discharged in bankruptcy. See Doc. No. 77, pg. 12-13. Plaintiff specifically identifies the Defendant's reporting in May of 2015 as inaccurate because the bankruptcy discharged her accounts in February of 2015. Id.

In dismissing Plaintiff's FAC, the Court noted specifically, "Plaintiff offered only vague allegations that Defendant 'reported derogatory information . . . after November 24, 2014,' the date Plaintiff filed her bankruptcy petition. Doc. No. 19, ¶¶ 44, 72" and "it is the bankruptcy discharge date, as opposed to the date a bankruptcy petition is filed, that is the crucial date." See Doc. No. 52. In Plaintiff's SAC, however, she concedes that prior to February of 2015, when her bankruptcy was successfully discharged, Capital One's reporting of the Accounts as "charged off" was accurate. See Doc. No. 54, ¶ 163. Plaintiff's contention in her SAC is the reporting then became inaccurate or misleading after her bankruptcy discharge, and it was Capital One's failure to remedy the alleged inaccuracies that gave rise to her claims. Based on her clarification of when the inaccuracy began, the dates pled in her SAC are sufficient.

## 2. **Metro 2 Guidelines**[5]

In her SAC, Plaintiff alleges Defendant failed to follow Metro 2 guidelines, which are well regarded as the industry standards, and based on that failure Defendant's reporting was inaccurate and materially misleading. See Doc. No 54, ¶¶ 44–79. Specifically, Plaintiff alleges that Metro 2 guidelines require "furnishers to update the CII indicator status of accounts discharged in Chapter 7 Bankruptcies with an 'E' notation, i.e. 'Discharged in Bankruptcy.'" Doc No. 54 ¶ 134. Defendant argues the SAC fails to identify a Metro 2 guideline that applies to a furnisher in Defendant's distinctive position[6]. See Doc. No. 65–1, pg. 18. While the alleged Metro 2 guideline does not explicitly include a furnisher who has previously sold, or otherwise transferred, the debt in question prior to the bankruptcy discharge, it does not unequivocally exclude them either. A reasonable inference can be drawn that Metro 2 guidelines do not distinguish between furnishers who still own debt, and those who have transferred or sold debt, for purposes of bankruptcy discharge notification.

Defendant argues Capital One's reporting was entirely compliant with Metro 2 guidelines, particularly those that regulate reporting of sold or transferred debt. See Doc. No. 65–1, pg. 19. In support of this argument, Defendant presented several excerpts from the Metro 2 guidelines which discuss furnisher reporting duties when accounts are transferred or sold.[7] See Doc. Nos. 71–1, 71– 2. Defendant contends that Metro 2 "does not indicate that a data furnisher's duty extends in perpetuity such that it would be required

---

[5] Metro 2 is the standard electronic data reporting format adopted by the Consumer Data Industry Associaion ("CDIA"). See Doc. No. 54, ¶¶ 44–46. Plaintiff alleges Defendant voluntarily chose to subscribe to the Metro 2 format in their credit reporting practices to credit reporting agencies. Id. at ¶ 132.

[6] Defendant argues the Metro 2 guidelines proffered by Plaintiff do not instruct on "how a prior account owner should report a charged off account that was sold to a third party and later included in a Chapter 7 bankruptcy." See Doc. No. 65–1, pg. 18.

[7] The Court was permitted to consider these excerpts as Metro 2 guidelines were "relied upon but not attached to the complaint [and] authenticity is not contested . . . ." Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001).

to report a new 'final status' of an account following a bankruptcy." See Doc. No. 65–1, pg. 20. However, as alleged by Plaintiff, Metro 2 does extend a duty to report a new post-bankruptcy account status by requiring "furnishers to *update* the CII indicator status of accounts discharged in Chapter 7 Bankruptcies with an 'E' notation, i.e. 'Discharged in Bankruptcy.'" Doc No. 54 ¶ 134 (emphasis added). On a motion to dismiss, "[a]ll allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the non-moving party." Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir.2004). In doing so here, the Court finds Plaintiff has properly alleged a deviation from Metro 2 guidelines.

Defendant next argues, that a failure to comply with Metro 2 reporting guidelines, standing alone, is insufficient to support a claim under the FCRA. See Doc. No. 65–1, pg. 18. Defendant relies on two cases to support this contention. Id. (citing Mortimer v. Bank of Am., N.A., No. C-12-01959 JCS, 2013 WL 1501452 (N.D. Cal. Apr. 10, 2013); Giovanni v. Bank of Am., Nat. Ass'n, No. C 12-02530 LB, 2013 WL 1663335 (N.D. Cal. Apr. 17, 2013). Defendant misrepresents the holding in both cases. In Mortimer, the court rejected Plaintiff's Metro 2 argument based on a finding that the facts pled were insufficient, but never explicitly held that a Metro 2 guideline deviation was an improper basis for a FCRA claim. Mortimer, 2013 WL 1501452, at *12 ("*As pled*, Defendant's alleged noncompliance with the Metro 2 Format is an insufficient basis to state a claim under the FCRA.") (emphasis added). The complaint in Mortimer was devoid of "any facts to demonstrate that non-compliance with [Metro 2] guidelines was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Id. In her SAC, Plaintiff offers several allegations demonstrating how her credit will be adversely effected.[8]

---

[8] See Doc. No. 54, ¶¶ 145–149.

13

In Giovanni, the court similarly dismissed Plaintiff's Metro 2 argument due to deficiencies in the complaint. Giovanni, 2013 WL 1663335, at *6 (N.D. Cal. Apr. 17, 2013). "[T]he [complaint] does not allege that [defendant] was required to follow the Metro 2 Format, . . . or that deviation from those instructions constitutes an inaccurate or misleading statement." Id. Conversely, Plaintiff here alleges that Defendant "adopted the CDIA's Metro 2 [guidelines] as its standard instruction book in respect to credit reporting . . ." See Doc. No. 54, ¶ 134. In addition, Plaintiff alleges that Defendant's non-compliance with Metro 2 guidelines constitutes an inaccurate or misleading statement alleging "[d]eviation from credit reporting industry standards can . . . result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference . . . ." Id. at ¶146.

Plaintiff identifies a recent case in which a court allowed FCRA actions to proceed based solely on improper Metro 2 guideline reporting. Nissou-Rabban v. Capital One Bank (USA), N.A., No. 15CV1675 JLS (DHB), 2016 WL 4508241 (S.D. Cal. June 6, 2016) (Plaintiff alleged "the Metro 2 reporting format directs furnishers to report 'D' or 'no data' during the pendency of a bankruptcy rather than the charge off [Defendant] actually reported.") (internal citations omitted)). Defendant argues the reporting in the previous Nissou-Rabban case occurred after the party had filed for bankruptcy, whereas in the present case, the alleged reporting concerns the pre-bankruptcy reporting of the accounts. The Court finds this distinction unpersuasive and determines Plaintiff's Metro 2 violation, standing alone, can support a claim under the FCRA.

Defendant raises another distinction between these two cases that warrants discussion. In Nissou-Rabban, the plaintiff alleges Capital One's original reporting of the debt as "charged off" instead of "no data" during the pendency of her bankruptcy was contrary to Metro 2 guidlines, and thus inaccurate or misleading. Nissou-Rabban, 2016 WL 4508241, at *1 (S.D. Cal. June 6, 2016). Conversely, Defendant points out this case involves accurate pre-bankruptcy reporting that subsequently becomes inaccurate or misleading after the bankruptcy is successfully discharged. Defendant cites Sheridan v.

14

FIA Card Services, N.A., in support of its argument that, ". . . reporting of historically accurate information does not later become inaccurate under the FCRA when the debts are subsequently discharged through bankruptcy." Sheridan v. FIA Card Servs., N.A., No. C13-01179 HRL, 2014 WL 587739, at *5 (N.D. Cal. Feb. 14, 2014). This Court agrees that historically accurate information should not be deemed inaccurate for purposes of the FCRA when the debt is subsequently discharged through bankruptcy, so long as it provides the complete picture, so as not to affect future credit decisions. In granting summary judgment for the furnisher, the court in Sheridan held that the alleged inaccuracies were ". . . unlikely to adversely affect credit decisions, particularly where the report also ***clearly notes that the account was discharged in bankruptcy***." Sheridan, 2014 WL 587739, at *5 (N.D. Cal. Feb. 14, 2014) (emphasis added). In other words, unfavorable historical information, such as a history of late or overdue payments, is unlikely to adversely affect decisions by a future potential creditor when they are adequately notified that the debt was subsequently discharged in bankruptcy. Plaintiff's credit report does not clearly indicate her debt was subsequently discharged in bankruptcy. In fact, that is the sole reason for her bringing this action.

Therefore, a much more accurate statement would be that Plaintiff's bankruptcy did not render Defendant's previous reporting inaccurate, but rather incomplete. The Ninth Circuit has held that ". . . an item on a credit report can be 'incomplete or inaccurate' within the meaning of the FCRA's furnisher investigation provision." Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010) (citing Gorman, 584 F.3d 1147, 1157 (9th Cir. 2009)). Defendant contends that their reporting was accurate on the date it was sent to Equifax, and that is sufficient to defeat Plaintiff's claim. However, barring a FCRA claim in situations where a subsequent event makes a once accurate reporting incomplete would be contrary to the FCRA's purpose of "protect[ing] consumers against inaccurate ***and incomplete*** credit reporting." Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1060 (9th Cir. 2002) (emphasis added).

15

Accordingly, this Court finds Plaintiff alleges sufficient facts to support a prima facie showing that Defendant's reporting is inaccurate or misleading when assuming all of Plaintiff's factual allegations are true, and construing them in the light most favorable to her. To prove her case, Plaintiff will need to establish "through admissible evidence that [updating the status of sold or transferred accounts discharged in bankruptcy] is in fact the industry standard, that [Capital One] deviated from it, and that this particular deviation might adversely affect credit decisions. . . . Whether these allegations turn out to be true is a question of proof that is not suited for resolution in a motion to dismiss." Nissou-Rabban, 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016).

### ii. Inadequate Investigation

Defendant next argues that Plaintiff's FCRA claim should be dismissed for failure to allege sufficient facts demonstrating that Capital One did not reasonably investigate the disputed information. See Doc. No. 65–1, pg. 24. Specifically, Defendant contends that Plaintiff's failure to allege the contents of her May 2015 dispute letter to Equifax is fatal, arguing reasonableness of the investigation cannot be judged without an analysis of what it was based upon. In support for this contention, Defendant cites to Gorman, which states, "[t]he pertinent question is . . . whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." Gorman, 584 F.3d 1147, 1157 (9th Cir. 2009). In opposition, Plaintiff argues that in an attempt to comply with this Court's previous Order [Doc. No. 52], her SAC explicitly alleges information relevant to why Defendant's investigation was not reasonable. See Doc. No. 77, pg. 16.

In her SAC, Plaintiff alleges that on or about May 15, she disputed Defendant's reported information regarding the status of the debt, by notifying Equifax in writing. See Doc. No. 54 ¶ 170. As Defendant noted, Plaintiff failed to plead the contents of that letter making it difficult to determine the reasonableness of Defendant's response. Equally problematic is Plaintiff's argument that Defendant's reinvestigation was unreasonable because, had Capital One adequately investigated, it would have removed the disputed

16

account "charge off" notifications from her credit report. See Doc. No. 54, ¶¶ 174–188. Plaintiff offers only conclusory allegations as support. Id. The Ninth Circuit has emphasized that an investigation for the purposes of the FCRA "is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." Gorman, 584 F.3d 1147, 1161 (9th Cir. 2009). Therefore, as this Court held in dismissing her FAC, alleging Defendant's investigation was unreasonable solely because the investigation failed to remedy the error, is not sufficient.

Plaintiff next alleges that Defendant maintains a company policy to not update credit reports following bankruptcy discharge in order to strong-arm individuals to pay a debt, which they no longer are legally obligated to pay, and this policy makes it fundamentally impossible for Defendant to conduct a reasonable investigation. See Doc. Nos. 77 pg. 18; 54 ¶¶ 85–102. According to Plaintiff, the alleged policy requires individuals to pay off legally unenforceable debt before Defendant will remove inaccurate information from their credit report. Id. at ¶¶ 85–102. Plaintiff argues it would be a fundamental impossibility for Defendant to conduct a reasonable investigation when Capital One maintains a policy so inherently unreasonable. See Doc. No. 77, pg. 19. Plaintiff's factual content to support the existence of this nefarious policy is limited. However, taking all factual allegations in her complaint as true, a reasonable inference can be drawn that Defendant would be unable to conduct a reasonable investigation with such a policy in place. Additionally, Defendant would be in the best position to engage in this factual inquisition, as Defendant would have the necessary documents–or lack thereof–regarding the existence of any company policy. Defendant's Motion to Dismiss as to the FCRA claim is **DENIED.**

### D. CCRAA Claim (Count II)

Defendant argues that Plaintiff's CCRAA claims should be dismissed because they are either insufficiently alleged or preempted by the FCRA. See Doc. No. 65–1, pg. 28. Plaintiff brings a claim under California Civil Code Section 1785.25(a), which provides: "A person shall not furnish information on a specific transaction or experience to any

17

consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." The FCRA preempts state law claims "relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F)(ii); see also Mestayer, 2016 WL 631980, at *4. This preemption, however, does not apply to California Civil Code § 1785.25(a). Thus a plaintiff may assert a CCRAA claim against a furnisher under 15 U.S.C. § 1681. 15 U.S.C. § 1681t(b)(1)(F)(ii). Plaintiff's SAC alleges that Defendant violated the CCRAA by furnishing information to a CRA when Defendant knew or should have known the reported information was incomplete or inaccurate. See Doc. No. 54, ¶ 205.

"Because the CCRAA's requirements of completeness and accuracy mirror those found in the FCRA, judicial interpretations of the federal provisions are 'persuasive authority and entitled to substantial weight when interpreting the California provisions.'" Montgomery v. Wells Fargo Bank, No. C12–3895TEH, 2012 WL 5497950, at *3 (N.D. Cal. Nov. 13, 2012). Plaintiff alleges that Defendant has adopted a "systematic pattern and practice of failing and refusing to update credit information" and is doing so in "full knowledge that it is violation of the law." See Doc. No. 54, ¶¶ 94, 102. The Court finds upon taking all factual allegations as true, a reasonable inference could be drawn that Defendant knew or should have known the information provided was inaccurate or incomplete. Accordingly, Defendant's Motion to Dismiss as to the CCRAA claims is **DENIED**.

\\
\\
\\
\\
\\
\\
\\
\\

## CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's Motion to Strike is **DENIED;** Plaintiff's Motion for Leave to Amend is **GRANTED**; and Defendant's Motion to Dismiss is **DENIED** as to both FCRA and CCRAA claims.

**IT IS SO ORDERED**.

DATED: January 23, 2018

_____
JOHN A. HOUSTON
United States District Judge